## George M. Stanley, Appellee, v. The Aurora, Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 15,969.

1. NEGLIGENCE—*what contract does not render contractors servants of owner.*  The fact that contracts provide that the working drawings shall be approved by the owner's engineer, that the form and mode of certain materials shall be subject to the approval of such engineer and that the contractors shall prosecute the work under the direction

and to the satisfaction of such engineer, does not operate to make the servants of such contractors the servants of the owner.

2. NEGLIGENCE—*what competent to show contractors to be servants of owners.* Parol evidence is competent notwithstanding the provisions of a written contract, to show that in fact the relation of master and servant existed between the owner and the contractors.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with finding of fact. Opinion filed November 15, 1911. Rehearing denied and additional opinion filed December 2, 1911.

HOPKINS, PEFFERS & HOPKINS, for appellant.

HENRY R. RATHBONE, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The declaration in this case contains three counts. The first count alleges that on March 30, 1907, appellant was operating an electric railroad through DuPage county, Illinois, and was engaged in constructing a certain bridge over a certain right of way and tracks of the Illinois Central Railroad Company in order to run its cars over said bridge and above the tracks of the Illinois Central Railroad Company; that appellee was then and there employed by the defendant in constructing said bridge and was then and there standing upon a certain iron girder which was being brought into place and moved by means of a certain ratchet and chain, and said girder was then and there suspended above the right of way and tracks aforesaid a great distance, to-wit, forty feet; that it then and there became and was the duty of appellant to use due care and diligence and to furnish appellee with only safe and proper appliances and a safe and sound chain from which to suspend said girder and by means of which to move said girder; that appellant did not regard its duty in that behalf, nor use due care and diligence, but then and there negligently, carelessly and unskil-

fully failed to furnish appellee with proper and safe appliances and failed to furnish a safe and sound chain from which said girder was suspended and by which said girder was moved; that appellant then and there well knew that said chain was unsafe and unsound and well knew that through the said condition of said chain appellee might and would be likely to receive a fall and be injured; that appellee did not then and there know of the unsafe and unsound condition of said chain and did not know of any danger to himself to be apprehended from said chain or from its condition and could not and would not in the exercise of ordinary care and caution for his own safety have known of such condition or of such danger; by means whereof, while appellee was standing upon said girder, as aforesaid, and was engaged in the ordinary course of his duties and was in the exercise of all due care and caution for his own safety, said chain broke and said girder was tipped and appellee was greatly jolted and jarred and caused to lose his balance and fell from said girder down upon the ground below and thereby sustained great and grievous injuries, etc.

The second and third counts allege, in like manner, the existence of the relation of master and servant between appellant and appellee. The negligence alleged in the second count is the failure of appellant to exercise reasonable care to properly inspect said appliances and chain, and the third count alleges that appellant, by its servant, not a fellow-servant of appellee, negligently ordered appellee to work on said girder with said ratchet, when said chain from which said girder was suspended and by which it was being moved was unsafe and unsound and likely to break and cause appellee to fall and be injured. To this declaration appellant pleaded the general issue, and a trial by jury in the Superior Court resulted in a verdict and judgment against it for $7,500.

On August 10, 1908, appellant, by Charles J. Jones,

its chief engineer, entered into a written contract with the Lafayette Engineering Company of Lafayette, Indiana, whereby the latter agreed to furnish all materials and to construct and erect upon foundations prepared by appellant, three steel girder bridges, in accordance with certain plans and specifications, made a part of said contract. The specifications provided, among other things, that the girders should be spaced, as required by local circumstances, and directed by appellant's engineer; that no work should be commenced until the drawings therefor were approved by said engineer; that the form and mode of manufacture of the heads of eye-bars should be subject to the approval of said engineer.

On March 1, 1907, a written contract was entered into by and between said Lafayette Engineering Company and R. R. Moorman of West Lafayette, Indiana, whereby the latter, as subcontractor for the erection of said bridges, agreed to furnish therefor all labor, tools, and false work; to unload the steel material from the cars, and construct suitable false work, and erect, rivet, paint and complete said bridges, in accordance with the plans and specifications, and carry on all operations to the full satisfaction and approval of appellant's chief engineer, Jones.

The evidence discloses that at the time Moorman entered into said subcontract he was engaged in erecting a steel bridge at Rockfield, Indiana, and that appellee was there working for Moorman; that appellee and his co-employes were then employed by Moorman to come to Illinois and work upon the bridges involved in said contract; that appellee accompanied Moorman to Illinois, and at the time he was injured was engaged, with such other employes of Moorman, in erecting one of said bridges over the tracks of the Illinois Central Railroad at East Elgin; that one White was employed by Moorman as foreman of the bridge gang. of which appellee was a member; that from time to time

during the construction and erection of the bridges under the original contract, appellant made payments thereon to the original contractor, the Lafayette Engineering Company, and said original contractor made payments to Moorman upon the subcontract, and Moorman paid to appellee and his co-employes their wages; that the sole authority to discharge appellee was vested in Moorman and his foreman, White.

The evidence further discloses that at the time he was injured appellee was engaged in sliding a certain steel girder into proper position by means of a ratchet coupled to a chain which was fastened at each end of the girder; that while appellee was standing on the girder operating the ratchet, a defective hook on the end of the chain broke, causing appellee to lose his balance and fall a distance of 25 feet to the ground.

Under the express averments of the declaration and under the instructions given to the jury, a finding that the relation of master and servant existed between appellant and appellee with reference to the work in hand and the manner of its performance, was essential to a recovery in the case.

There can be no question but that the contracts between appellant and the Lafayette Engineering Company and between the latter company and Moorman, constituted the Lafayette Engineering Company and Moorman independent contractors, with reference to the construction and erection of the bridges involved. The fact that said contracts provide that the working drawings shall be approved by appellant's engineer, that the form and mode of manufacture of certain materials shall be subject to the approval of said engineer, and that the contractors shall prosecute the work under the direction and to the satisfaction of said engineer, did not operate to make the servants of said contractors the servants of appellant. Pioneer Con. Co. v. Hansen, 176 Ill. 100; Foster v. City of Chicago, 197 Ill. 264; Vacker v. Yeager, 151 Ill. App. 144.

It is, however, claimed on behalf of appellee that, notwithstanding the provisions of the written contracts, the relation of master and servant in fact existed between appellant and appellee, and as tending to support such claim appellee was permitted to introduce evidence as to the conduct of the parties and as to what was said and done by appellant's engineer, Jones, in and about the performance of the work. The evidence was not improperly admitted. A party may not be permitted to employ a contract, which by its terms assumes to establish the relation of an independent contractor as to one of the parties, as a cloak or shield to avoid liabilities arising out of the relation of master and servant, when such relation exists in fact.

The evidence so introduced on behalf of appellee tends to show that appellant's engineer, Jones, was present nearly every day during the erection of the bridge; that upon one occasion, when the bridge had been set up on two railroad irons, and one end was lower than the other, Jones said to the workmen, "You boys better block that up, or the bridge will slide off in the center, and we will get into trouble;" that upon another occasion he told the workmen to keep the bridge square; that on another occasion he told the men to put the beams in and he noticed the rivets to see if they were bolted up good; that on another occasion, when appellee was engaged in taking the ends off a couple of bolts, he said, "Look out now, Stanley, don't take those nuts clear off or the end of the crossbeam will drop down;" that with reference to material for the false work he told Moorman's foreman, White, "You can get all the timbers you want and you can have a car set in and load it, and get all you want to;" that on the evening before the accident, while the men were trying to get the girders together, Jones inquired of White, whether the latter could not get them together easier, and White replied that he could, but

would have to have the tools there, whereupon Jones told White he had better get the tools; that Jones told White he could go to appellant's tool house, and get anything he wanted.

It further appears from the evidence that the chain with the hook attached thereto, which broke and occasioned the injury to appellee, was procured by White from appellant's tool house a few days prior to the time appellee was injured, in pursuance to a general authorization or of a suggestion by Jones that White could go and get whatever appliances and tools appellant had that were needed by the men engaged in erecting the bridges. There is no evidence tending to show that any of the appliances and tools so procured and used by White, were selected or designated by Jones or any other servant of appellant.

In anything that was said and done by Jones, the chief engineer for appellant, we perceive nothing which substantially tends to support the averment in the declaration that appellee was employed by and was the servant of appellant.

White testified that he was hired by Moorman in the capacity of a foreman; that as such foreman it was his duty to oversee the work, and that he had charge of the four men who constituted the gang that erected the bridge.

What was said to the men by Jones with reference to blocking up one end of the bridge to prevent it from sliding, and by Jones to appellee with reference to taking the nuts off the bolts, was merely cautionary, and might well have been said by any observant bystander for the purpose of averting an accident

That the work generally was to be performed under the direction and to the satisfaction of appellant's chief engineer, did not make appellant liable for an injury to appellee, the servant of an independent contractor, under the doctrine of *respondeat superior*. Pioneer Con. Co. v. Hansen, *supra*. Appellee was

hired and paid by Moorman, and was under the direction and control, with reference to what work he should do and the manner in which he should do it, of Moorman and his foreman, White, who had the power to remove and discharge him. There is no pretence in this case that appellee was loaned by Moorman to appellant. In Yeates v. Ill. Cen. R. R. Co., 241 Ill. 205, it was said: ''The relation of master and servant exists where the employer has the power to direct what work the employee shall do and the way and manner in which it shall be done and has power to remove and discharge him.''

Appellee relies upon a line of cases wherein it is held that, where A assumes to furnish tools and appliances to B, A is liable for a failure to exercise reasonable care to furnish reasonably safe tools and appliances, whereby a servant of B is injured. These cases are not in point, because such state of facts is not alleged in the declaration in the case at bar, which, as before said, predicates a right of recovery wholly upon the averment that the relation of master and servant existed between appellant and appellee.

As the evidence fails to show the existence of such relation, the judgment must be reversed with a finding of fact to be incorporated in the judgment of this court.

*Judgment reversed with finding of fact.*

Finding of Fact: We find as an ultimate fact that at the time of the injury complained of in this case the relation of master and servant did not exist between appellant and appellee.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

**Per Curiam.** The petition for rehearing filed by appellee suggests that, in the main opinion, the court overlooked, or did not sufficiently consider, two points urged upon its attention, viz.: *First,* that appellant

being a public service corporation could not delegate to another the construction of the bridge in question, so as to relieve itself from liability by invoking the law of independent contractor; and *second,* that in cases of tort it is not necessary, in order to a recovery, to prove each and every averment of the declaration, but it is enough if a sufficient number of the material averments be proven.

In support of the first point, counsel relies upon the cases of North Chicago St. R. R. Co. v. Dudgeon, 184 Ill. 477, and Chicago, etc., Gas Co. v. Myers, 168 Ill. 139. It is sufficient to say that these cases are, upon the authority of Boyd v. Chicago & Northwestern Ry. Co., 217 Ill. 332, clearly distinguishable from the case at bar. The Boyd case is controlling here.

As to the second point, the main opinion distinctly recognizes the rule contended for by appellee, but expressly holds that sufficient facts are not averred in the declaration to authorize a recovery upon any ground other than the existence of the relation of master and servant between appellant and appellee.

The petition for rehearing is denied.

*Rehearing denied.*